The next case for argument is 13-1462, Ridex v. Ford Motor Company. You want to tell me how to pronounce your name, Mr. Stamoulis? It's Stamatia Stamoulis, Your Honor. Good morning, Your Honors. Doesn't get more Greek than that. I go by Stam. Stam Stamoulis, Your Honor, on behalf of Ridex Ltd. May it please the Court. Your Honors, this appeal presents an important question that this Court has not yet squarely addressed. And that is whether the presumption of validity codified in 35 U.S.C. 282 applies to a validity challenge based on 35 U.S.C. 305. The District Court below combined this Court's holdings in CREO and Quad Environmental to conclude that the clear and convincing evidence standard does not apply. Where did the District Court say that? Your Honor, if you would go to the appendix, the opinion that deals with invalidating Claims 39 and 40. It only takes two and a half pages. It starts on A18 and it goes until A21. Yes, I'm there. So where did he say the clear and convincing evidence standard doesn't apply to re-examined claims? Well, Your Honor, on A19. We've got a case here about attorneys making improper representations to the Court about statements of law or fact. And you're going to tell me that this District Court judge held that the clear and convincing evidence standard doesn't apply to re-examined claims. So please show me precisely where it does not, where he says that. Yes, Your Honor. It is not, and let me be clear for the Court, the District Court does not precisely reject explicitly the application of the clear and convincing standard. She does it implicitly. Where? And if you look on A19, the District Court summarizes the plaintiff's argument in three parts, A, B, and C. Part C being that plaintiffs argue that the defendants have not shown by clear and convincing evidence that dependent claims 39 and 40 are invalid. And then if you go to page 21, well, on page 20, the Court begins her analysis of part A of the claim differentiation argument. And that ends on the first paragraph of page 21. And then the Court disposes of B and C in the following paragraph and then concludes in the third paragraph that the claims are invalid. And so the Court acknowledges that the clear and convincing argument was raised on page A19 and then disposes of the argument in one paragraph on page A21. And again... Where? Where does she dispose of it? Well, I can read the paragraph. It's only one sentence. Equally unavailing are plaintiff's arguments that the PTO looked and allowed up the amended claims. Therefore, the Court should defer to the PTO's determination. The Federal Circuit has made clear that while courts may take cognizance of and benefits from the proceedings before the patent examiner, the question of claim scope is ultimately one for the courts to decide without deference to the ruling of the patent examiner. So these two sentences, one of which is a direct quote from our case, is the quote inaccurate or miscited. I'm sorry, I didn't hear you. One of the two sentences that you just read us is a direct quote from our case. Is the quote inaccurate or miscited or somehow otherwise wrong? No, Your Honor. So she made a statement of law in the form of a direct quotation from one of our cases. Yes. And you're saying I should interpret this statement of law from our case as rejecting the idea that an issued patent has a clear and convincing evidentiary burden that attaches to it. Is that your argument to this Court? Essentially, yes, Your Honor. I mean, this is the only way that she disposes of the argument. And, you know, more importantly, when Claims 39 and 40 were put before the patent examiner, the applicant cited to a specific portion of the specification to support the issuance of Claims 39 and 40. And that portion of the specification, which was repeated in the briefs, begins at Column 3, Line 40, and ends at Column 3, Line 51, as an embodiment that would have supported these Claims 39 and 40. In this two-page analysis, two-and-a-half-page analysis, the District Court does not even consider that embodiment in determining whether or not Claims 39 and 40 were improperly brought in. And so had the Court applied a clear and convincing evidence standard, the burden would have been on the defendants, the appellees, to rebut that portion of the specification that the plaintiff had pointed to. And the Court would have held, by clear and convincing evidence, that it had been rebutted and that these other portions of the spec overruled it. Wait, you're pointing to, you said Column 3, Lines 40 through 51? Yes, Your Honor. And what about that do you believe supports Claims 39 and 40? The entire example, and if Your Honor would like, I could read it into the record, but it's fairly short. To summarize, it's essentially an embodiment where the operator of the vehicle swipes the RFID card and the vehicle is permitted to start and drive away. And so that embodiment does not include a reference to an external fuel source. It does not include a reference to a commercial exchange where money is... I think one of the critical questions for you is, does it contain support for the notion that the fuel line could be the fuel container as claimed? So I don't see anything in this paragraph that even mentions a fuel line or anything else. So where's the support in this spec for the idea that a fuel line is a fuel container? The support, Your Honor, is that the patent examiner... But wouldn't you agree that, because I read every single citation to the record that the prosecuting attorney referenced as providing support for all of the claims in re-exam, and I couldn't find any that suggested a fuel line is a fuel container. Am I missing one? Because you pointed me to one section, and while this may go to your commercial, non-commercial transaction argument, I don't see how it supports a fuel line being a fuel container. You're correct, Your Honor. It's not explicit. The argument of the plaintiff appellant has always been that it was implicit, but that this implicit reference in the specification was clarified by the addition of claims 39 and 40, and that is what put the public on notice as to exactly what was being claimed in this specification. Let me understand. Procedurally, validity is only before us as a defense at this point, right? All the counterclaims were dismissed? Yes, Your Honor. All right. So why is validity even relevant for us to consider if you can't prove infringement, which means you have to win on all three claim constructions? Well, I think everything depends on, honestly, the validity of claims 39 and 40. If claims 39 and 40 are found to be proper, narrowing claims, then we win on infringement because those claims would directly read on the accused products. It may sound a bit circular, but it really turns... It's very circular because if they are valid, it still doesn't mean that that reservoir would be the same as a fuel, that a fuel line can constitute a reservoir. Yes, Your Honor. But if they are valid, then container cannot be limited. It's improper to have limited a container to an outside fuel source. So, I mean, it really, one hinges on the other. You have to win on all three claim constructions, right? Yes, Your Honor. Not just that one. Not just that one. So why don't you address the other two claim constructions? Well, so, Judge Moore, I don't know if I finished answering your prior question. You did. Don't worry. I understand you. Okay. Thank you, Your Honor. Well, so the constructions are the one that is outside fuel source and the fuel lines being the container. The second is a fluid delivery system. And, again, claims 39 and 40 show that everything is contained within one vehicle. There's no outside source for delivering the fuel to the vehicle. It's all contained in one system, and that's what the prosecuting attorney presented in Column 3, Lines 40 to 51. And the final term is this commercial transaction term. Well, transaction term, which the court determined to be a commercial exchange. And, again, our position has been that a transaction is just merely an event. And so that's our position with regard to those three terms. And am I into my rebuttal time? You are into your rebuttal time. I'd like to pause at this point. Yes, thank you, Your Honor. Let's move on. We'll hear from the other side. Okay. Mr. Perella? You may have pleaded the court. Dominic Perella for defendants. Defendants don't likely ask for sanctions in this case or any other type of case. Oh, defendants generally do likely ask for sanctions in my experience. Lightly? Yes. Well, in this case, defendants don't likely ask for sanctions. We waited. In fact, with respect to Rule 38, certain of the defendants waited until all the briefing was in to see whether it was appropriate to move for sanctions. And I think it's clear that it is. I think that the claim construction arguments advanced by plaintiffs have been frivolous from the outside of this case. But that doesn't make sense. Their claim construction arguments from the beginning were plain meaning, right? Isn't that what they said? Their claim construction arguments are plain meaning. How can you say plain meaning is frivolous on its face? I mean, that's troubling. The reason I can say that is because this court said in Phillips and it said in Verizon and any number of other cases that when you're figuring out what a claim means, you don't just look at the words of the claim. You read the claim in light of the specification. And, in fact, in Verizon, the court said- I don't see how the court could ever hold that someone's argument that the claim term should be given their plain meaning is on its face frivolous. Now, perhaps they're infringement contentions. You may be on to something. But by them simply arguing that the term should be given its plain meaning, how can we be sanctioning half the lawyers that appear before us because that is sort of a ploy that a lot of lawyers use, especially when you've got a word that's a pretty simple word like transaction. Let's use transaction as an example. We have the word transaction. They take the position this doesn't need to be construed, and to the extent you construe it, it simply means an event. The defendant took the position, look, even on its face, the word transaction means something commercial. But, if that were not clear enough, let's look, the defendant said from the outset, at the specification. And I'm pointing at Joint Appendix 131. Column 2 of the specification has the summary of the invention, and it uses again and again the phrase, a feature of the present invention is, which this court said in Verizon and has said in other cases, limits the invention. The claim must be limited to that statement. Have you read the embodiment that your friend refers to in column 3? That doesn't seem to have any commercial, transactional relation. Well, Judge O'Malley, if I might, can I walk through column 2 and then turn right to column 3? Sure. Okay. So top of column 2 and bottom of 1, a feature of the present invention is to provide a fluid delivery control system, which is automatically activated when a fluid delivery nozzle is inserted into the corresponding input orifice of a fluid container. As the district court recognized, this is complement only with the idea that there's an external station or some kind of external pump, and you're putting the gas pump into the gas tank and inserting gas or other fluid. Very next line, another feature of the present invention is identification for, quote, unquote, filling purposes. Very next line, a further feature of the present invention is to permit automatic payment, quote, unquote. I can go on and on, but there are six. I'll tell you what this reads to me. I mean, you probably are very familiar with patents. This reads to me, Laura, more like it's an object of the invention, too. It's an object of the invention, too. I mean, they had the unfortunate choice of using the words present invention, and we have subsequently said those are magic words. But nonetheless, this doesn't read as though they meant to say every claim has to necessarily have every one of these features, right? Look, I don't see any other real list of the objects of the invention in this patent, which is quite a standard practice in patent law. Isn't this exactly where that would normally appear, and doesn't it read like that to you? I think two things, Judge Moore. Number one, this court has said again and again, and it's not just in Verizon. It's also in Hill-Rom and Regents of the University of Minnesota and other cases that the words feature of the present invention are magic words. If you say that, and it's not with respect to a particular embodiment, that limits the scope of the invention. And in fact, in the EonNet case, which Judge O'Malley was on, the court said it's perfectly proper when construing the claims to look at the purpose of the invention. And so I think looking just for 30 seconds at Column 2 of the specification, it was clear from the outset that plaintiffs' constructions of fluid delivery system, fluid container, and so forth, could not possibly be what this patent was about. And it's not just, by the way, Column 2. If you look through the whole patent at Column 10. Let's go back to where I was, because we also have plenty of cases, including one where I, as a district judge, was reversed because I looked too much at the specification. This court said, here's your problem. There is an embodiment that you're examining, and you can't read an embodiment out of the claim. So how do we read this embodiment out of the claim? So he points at Column 3, lines 40 through 47 or thereabouts. And this, by the way, let me mention at the outset, Judge O'Malley, this discussion was had at great length during the Markman hearing. This point was raised below. They pointed to this column of the specification. And the answer that was given by the defendants below and that I will give now is that, first of all, if you look at the lines to which he's pointing, they mention nothing whatsoever about fuel. Claim 22 is about a fuel delivery transaction. And if you look here, there's nothing about fuel. There's nothing about fluid. It simply says one of the things this invention can do is, because you have this ID card, when you put it into the car, it will allow you to turn the car on. It doesn't say anything about how that happens. Is it electronic? Is it by locking the steering wheel? There's no way to know. And if you look at the next column, Column 4, line 37, way, way later in the description of this particular embodiment, it says a refueling operation will now be described. And so what's going on in Column 3 not only is ambiguous at best as opposing counsel stated, but it, in fact, on its face, doesn't have to do with fluid transactions. Now, precisely what is it that you think was frivolous? Their maintenance of the suit against the products that your company that you represent produces or particular phrases in terms of their claim construction argument? I mean, do you think what precisely would you direct us to is the crux of your argument about why either the appeal was frivolous or the—we also have your crux appeal for Rule 11 here. So what is really the best argument you have? So let me address separately Rule 11 and Rule 38. On Rule 11, I think our argument is that from the outset, their infringement contentions and claim constructions, all three of the main ones, were frivolous. And that's so because, first of all, I think even on the face of the claim constructions, we have the far better reading that a transaction is commercial, that a container can't possibly be a fuel line. But when you look at Column 2 of the specification, again, which uses the phrase feature of the present invention again and again, I think our position is they knew from the outset that these were frivolous arguments, that this invention simply has nothing to do with internal car security systems. Now, at the very beginning of this case in 2011— It can't be—so their contentions were frivolous. I just want to be clear about what you think is frivolous, because I don't read their claim construction arguments as having enough precision to fall into the category of frivolous, right? There's no clear statement in their claim construction about what— something that I would deem is necessarily frivolous. That's where I'm having trouble with. But as applied maybe, maybe the answer is as applied to your product, even though they didn't say exactly what this meant, if they're applying it to your product, they clearly indicate that it means the following. Is that a way to think about it? I think that is a way to think about it. So I think if you want to break this down and look at the particular claim constructions, I think they're frivolous. And the reason they're frivolous is because when you aggregate it and you say, you have to read this claim, not standing alone, but as a whole as part of the written description of this patent, and if you look at every jot and tittle of the written description of this patent, it's clear that what this patent is about is an external fuel source like a gas station. You stick a gas hose into your car and you put it in fuel. One of the things that's confusing me is part of your argument for frivolity, you point to the fact that these guys indeed went back to the patent office and got these new dependent claims. Well, really, aren't we hard pressed to rely on sanctions and frivolity based on the fact that people went to the patent office and actually got their claims granted? I think not, Chief Judge, and here's why. If you look at the timing in this case, you have a situation where they applied for this patent in 1990 and got it in 1993. And as I said, I won't belabor the point. It's clear if you read this patent, it's clear as day, that the patent is about this external sort of fuel transaction where you're getting gas. Then the car industry developed these keys that are securities against car theft. And then in 2004, this is a self-initiated re-examination. This is not something where someone was challenging their patent. They go back, self-initiated re-exam, and they stick independent claim 39, which redefines everything and is the equivalent. But the patent examiner granted those claims. The patent examiner granted it, but this court has said in a number of different cases that first of all, of course, this court is the one that determines whether claims are valid, but second of all, that the patent examiner, like any lower court, is not considering things that are not raised before it. And it's not as if there was an adverse party in this re-examination. No, I appreciate that, but I'm getting to the argument, to your sanctions argument. I mean, we're not getting to the merits of that. Certainly, the district court had no problem saying that these claims were invalid. But if you want us to rely on the fact that their conduct in going to the patent office and getting claims granted is frivolous on its sake, I mean, it's kind of hard to do. Do you understand my concern? I do understand your concern. Let me try to come at it this way. What went on in the patent office, to my mind, was abuse of the patent system. You have no obligation of inequitable conduct. No, I'm not, and that's not part of the Rule 11 calculus. But just, I think that, so starting with Phillips, right, the original point is, what does this claim mean? We look at the claim as the patent was originally issued. And as the patent was originally issued, it is crystal clear that this patent is about, as I said, this external fuel transaction. So when you go in 2004 and you go back to the patent office and you say, hey, we're doing a self-initiated re-examination, we're adding all of this material, and you know full well that the sorts of products you're now trying to cover are far beyond what your original patent covered, you know that that's a Rule 305 violation. Now, they managed to smuggle it past the patent office, but I don't think that that should... Smuggling past the patent office, I mean, that assumes that these patent examiners do absolutely no work, do nothing, that they just rubber stamp something. I mean, you haven't alleged inequitable conduct. You haven't shown us anything in the prosecution history where they affirmatively misrepresented to the patent office what they were doing. I mean, it sounds to me like your problem is that you're trying to fit a square peg into a round hole. You're making arguments that might make sense under 285 and its lethality of the circumstances analysis, and you're talking about whether or not what they did on their claim construction was objectively reasonable, but the standards under Rule 11 are much higher. Judge O'Malley, in every single case, of course, in which sanctions have ever been granted by this court, in the Raylon case, the Chief Judge Professor, and E.O. Net and others, obviously someone managed to get their claim granted. I mean, there's always a valid patent in all of those cases. That has never stopped the court from imposing sanctions when they found that the claim was frivolous or that something was blatantly invalid. I don't think that the fact that the patents... I mean, there's no need to denigrate the patent examiners. They don't have a ton of time necessarily to look at these materials, but the fact of the matter is, if this logic applied... How precisely is Claim 39 broader than Claim 22? The short answer is this. You read Claim 22, both on its face and in light of the specification, and it's a situation where the district court was quite right. The fuel delivery system is an external tank of some sort, like a gas station. The fuel container is the gas tank of a vehicle, and the transaction is commercial. And then you look at Claim 39, and Claim 39 is taking that and it's converting it entirely into... Wait, no, no, no, time out. So if Claim 39 is dependent on... Claim 38, which is dependent on 22. So if 22, on its face, says commercial, according to you, then how could Claim 39 possibly, as granted, be broader than that? Well, it's interesting that you say that. I was thinking about this as my opponent was talking. I think that the answer is, it's either broader or, if you're going to read in all the limitations... It's got to be the alternative. Not what you're saying, but the infringement contentions are broad. I agree, yes. So it's either broader or, if you say, we're going to read all the limitations from Claim 22 into Claim 39, as you have to do, then Claim 39 still doesn't cover these products because it's still a commercial transaction and so on and so forth. So we don't actually even need, I think, to reach the 305 issue to win here. I mean, all you have to do is read the limitations from Claim 22 in. I think we have to reach the 305 issue because it's part of their appeal, don't we? No, I mean, my point is that even if we did not, I mean, I think we have clearly the better case on 305, but even if we didn't, I think we still win because Claim 22 can't possibly cover our products and neither can the dependent claim. So if I read the limitations of Claim 22 into Claim 39, then it isn't, in fact, broader. Well, so, I mean, if you look at it that way, then nothing can ever fail 305. Sure it can. I don't understand. Well, so if you read all the limitations of 22 into 39, then you have a situation where… Well, no, I don't have to read them in. This is a dependent claim. Right. It's considered as if it was written in independent form with all of those plus this new one, the new condition. But all the previous limitations still have to apply or else it's broader. Right. Okay. But if all the previous limitations apply, and I hope I can still reserve a minute for rebuttal on the sanctions issue, but if all the previous limitations apply, then, I mean, there's any number of ways to think about this. One is it doesn't infringe. Two is it's broader. And three is it doesn't make any sense because then you have something that says it's a commercial transaction, it's an external fuel source, and yet somehow it's also inside the vehicle. I mean, the bottom line is I think the simplest way to think about it is that it's obviously broader. But I think no matter how you think of it, we still prevail. Do you agree procedurally that if, in fact, you read all those limitations in and we would find non-infringement that because invalidity is only presented as a defense in this appeal, that we wouldn't need to reach that question? I think that's correct. Let me make, if I might, two very quick further points. Number one is the district court didn't write a Rule 11 opinion. Well, it did, but it simply said denied. And this court said in Raylon and the Fifth Circuit, whose law you're applying to is equivalent, that the district court has to do more than that. No, we said the district court has to do more than that if the record creates a scenario in which we think there was some significant merit to the Rule 11 petition. But both the Fifth Circuit in our court, in B. Braun and others, or S. Braun and others, have also said if that's not the case, then we're not going to make the district court's right opinion unnecessarily in every instance. Yes, I agree with you. I think that there are a lot of cases where someone seeks sanctions sort of as pro forma matter, and it's not, you know, it really is a close case. And, of course, the courts have said in those situations, we're not going to make you write an opinion. I respectfully think this is not that case. And the last thing I'd just like to say quickly is, even putting aside Rule 11, we have an argument for Rule 38 sanctions here. And that stands on two bases. One is the frivolity of the infringement and claim construction arguments. But the other is the way this appeal has been conducted. The opening brief doesn't mention any of the reasons that the district court found against the plaintiffs. It doesn't talk about the words of the specification. It doesn't talk about ICU medical and other adverse precedent. And I think that, too, is a reason why sanctions are appropriate. Can I go back? Because you never did answer my question. Isn't there a distinction between an analysis that might be appropriate under 285 and one that is appropriate under Rule 11? Well, Rule 11, of course, you're right, is about the baselessness of particular assertions. And I think, as I said to Judge Warren, the particular assertions we're relying on with respect to Rule 11 are plaintiff's assertions both in their complaint, in their briefing, in their markman briefing, and so forth, and even their opposition to Rule 11 about how the claim construction should work in this case. Each one of those, we would argue, was a frivolous and baseless contention. And they were on notice starting from 2011, documents number 106 and 110. Defendants filed counterclaims saying that the claims were, quote, They've been on notice of this since the outset. Okay. We've exceeded your time as a result of questions, so we'll restore a minute of rebuttal on the sanctions question. And to keep it even, we'll add three minutes to your three-and-a-half minutes that you have remaining. Thank you, Your Honor. Just a number of points in rebuttal. First, hold on one moment. I just want to make sure the clock is right. So can we add three minutes to this gentleman's time? Yes. So it would be 6.4. No. It's 6.4 by my count. It's remaining. I'm going to get back to six, and I can count from there. Okay. All right. We'll come to that. Thank you, Your Honor. Thank you. Thank you. A few points. First, the example that I pointed to in the specification, column three, lines 40 to 51, that was present in the specification when the patent was first filed in 1990. So that has always been an embodiment that was in the patent. And my counterpart here criticizes that section because it's not clear whether it's referring to electronic locking or ignition shutoff. But he also stated that this whole patent is about fuel delivery. That's what the whole patent is about. So if there's an example in the patent where someone gets into a vehicle, swipes a card, and is able to drive away, the whole patent is about fuel delivery. So our argument is that that example is about fuel delivery. That's what this patent is about. And this case, as was pointed out, was not brought against the automakers until claims. I'm sorry. So how is that starter example about fuel delivery, meaning fuel delivery from the ignition switch? I don't know. Yes, Your Honor. Your column three example. How is that about fuel delivery? The position of Ridex is that what that example shows, and it was claimed using 39 and 40, is that when the RFID card is swiped, that the fuel is then allowed to flow to the engine. And that without authorization of that RFID card, the fuel is not allowed to flow. And this matter was not brought against the defendants here until claims 39 and 40 were issued, as was pointed out by the court. And the court did point out that their criticisms of 39 and 40 and the fact that those were smuggled past the examiner somehow sounds an inequitable conduct, and that's not before the court. But this would be a far different case if Ridex had put this patent into RayExam, attempted to get claims 39 and 40 issued based on its representations to the patent office, and the patent office had refused to issue those claims. And then Ridex had brought its suit based on its reading of claim 22. Then I would concede that that would be frivolous, and that would be an improper construction, and there would have been no merit to bringing that case. But the examiner is one that's presumed to be one of ordinary skill in the art, and the examiner found support in the specification for the issuance of claims 39 and 40. And Ridex's position has always been that the issuance of claims 39 and 40 established the prima facie case for Ridex's claim construction, and that it's prima facie evidence that its construction is not unreasonable. Do you agree that because 39 and 40 are dependent claims that you have to read all the limitations of claim 22 into 39 and 40? Yes. Yes, that in order for claims 39 and 40 to be proper dependent claims, they have to be more narrow than claim 22. Well, I know, in fact, they depend on claim 22, so they have to. So it's as though all of the limitations of 22 plus the new limitation of 39 is present in that claim, correct? Yes, Your Honor, absolutely. So what I don't understand is how you can argue infringement and that, in particular, what's bothering me is your argument that a fuel line, the portion of the vehicle that you've accused of infringement, doesn't include the gas tank, for example. It's just the injection system. And so you've said the fuel line, standing alone, no other components, is the fluid container. So how is that argument not frivolous? Well, it's not frivolous because, at least from a technical perspective, it's true. The fuel lines contain fuel. Okay, but you know what? If I poured my glass with water in my hand and I'm holding water, is this now a fluid container? My hand is a fluid container, according to the statute? It's containing fuel. So does that mean you meant to cover this using functional claim language? A fluid container is not a structure. It is rather anything capable of holding fluid because functional claiming requires 112.6 compliance. I didn't see you make that argument. No, Your Honor. But it's integral to how a vehicle works. When a vehicle is operated, when a vehicle is shut off, the fuel does not drain from the fuel lines. In order for a vehicle to start, the fuel has to be in the fuel lines. Yes, but Claim 22 set out a fluid container on the one hand and a separate element, which is the fluid delivery system, which included all the conduits and fuel lines. So given that Claim 22 has two separate and discrete elements that are set out, how can you enclaim 38 morphem into a single thing? Haven't you just read out the fluid container when you do that? No, Your Honor, because the fluid delivery system is actually the fuel pump. The fuel lines are outside of the engine. They lead to the fuel pump. The fuel pump then takes the fluid and puts it into the engine and into the combustion chamber where it is utilized by the vehicle in order to operate. All of the examples of fluid delivery system in this patent are the conduits for transferring the fluid from one place to another. They're not ever associated with the fluid container language. Why aren't the fuel lines part of the fuel delivery system quite clearly under this patent? Well, Your Honor, because there are further conduits. In the structure of a vehicle, the fuel lines lead to the fuel pump, and then there are further conduits from the fuel pump into the combustion chamber. So there's multiple structures there. But your argument that the fuel lines are the fluid container just by virtue of when you turn the car off they still happen to have fuel is akin to me saying a straw is a fluid container when it sits in a glass of water because there's a portion of it that has water in it. It doesn't make the straw a fluid container. It's still the conduit for moving the fluid from one place to the other, but the glass is the container. Your Honor, and I don't know how much of this is actually on the record, so I don't want to go too far into adding facts for the court, but a vehicle won't start unless the fuel is present in the fuel lines in order for the fuel pump to deliver it to the combustion chamber through the conduits that exist between the fuel pump and the combustion chamber. So the fuel line is the reservoir that the fuel pump draws from. When a car sits idle, the fuel drains out of the fuel pump. It's designed to do that because otherwise you'll get clogged injectors and back in the days when people had carburetors you'd get carburetors that would gum up. So the fuel doesn't stay in the fuel pump, but the vehicle wouldn't operate if the fuel lines were dry when you started the fuel pump because you'd have to have a pre-pump to then deliver the fuel from the gas tank into the lines so that the fuel pump would then be primed to be able to grab that fuel and through the conduits deliver it to the combustion chamber. So it's simply how internal combustion engines work. It's not a strain construction. I just want to get one last point. I know I'm over time, but when Claims 39 and 40 were issued by the Patent Office, Mr. Ryan acquired a property right in those claims and he has a right and when the District Court invalidated those claims, the District Court took away that property right and he has a right to an appeal for the deprival of that property right. But only so long as your arguments made in that endeavor are not frivolous. Yes, Your Honor. And again, I would say that if this case had been brought on Claim 22 after a situation where 39 and 40 were not allowed by the Patent Office, it would have been frivolous. Thank you for your argument. So we'll give you three minutes if you need it to keep it even again. Let me just make four quick points. The first one is that... This is just on the cross appeal. Yes. Your rebuttal time is... Correct. Thank you. Firstly, I want to point the court to Joint Appendix 1262. This is my opponent's complaint and they actually say, and this is in our brief as well, they actually say in their own complaint that the fuel lines are not the fuel container. They know that the fuel lines are the fuel container and it's frankly absurd to contend otherwise, not just on the plain language, but also when the case is read and later the specification. Second point, and this goes to Rule 38 sanctions. The plaintiffs have now changed positions five times on whether they're relying on the dependent claims to construe Claim 22. At the Markman hearing, excuse me, in the Markman briefs, they said they were. At the Markman hearing, they said they weren't. In the opening brief, they did repeatedly on pages 5 through 15. In their opposition to Rule 38 sanctions, they said they were not and in their reply brief and now today, they are again. And I think that that, in addition to the frivolity of the claim construction position they've taken, supports Rule 38 sanctions. And last but not least, let me just close with a quote from Ian Nett. Ian Nett was a case that looked a lot like this one. It was about whether the claim used the word document and the question is whether a document simply means a hard copy document or whether it's broader. The specification said throughout that it meant a hard copy document. That was both explicit and implicit. And this court said that when the specification repeatedly and consistently defines the invention a certain way, that clearly refutes contrary arguments and makes them objectively baseless. It said that the sanctions are appropriate where the specification exposes the frivolity of the plaintiff's construction. In Ian Nett, we were affirming a trial court's exercise of its discretion to award sanctions. So that was an abuse of discretion standard of review. And here, we're also reviewing under an abuse of discretion standard of review. Well, two things about that, Judge Amalek. Number one, there is no opinion explaining the district court's rationale. And I think that like in Raylon, excuse me, like in the cases where the court has, well, both Raylon and the Fifth Circuit cases where the court has said the district court has to provide an explanation where there's a basis for Rule 11 sanctions. I think this is such a case. So at the very least... I know you have a pending 285. Well, you don't. She ruled against you without prejudice to refile and she indicated she'd wait to see what we did on claim construction. Is it your belief that if we denied your cross appeal on Rule 11, then she would automatically deny your 285 motion? I don't think she would have to automatically deny it because, of course, Rule 285 under Highmark and Octane is a broader inquiry that can be based on other factors other than simply the frivolity of arguments as made in written pleadings. But I do think that that actually cuts the other way, Judge Moore, which is to say I think that the district court denied the Rule 11 sanctions pro forma, or at least I would like to think so. Because when we went for Rule 54 and 285 sanctions, the district court didn't say no. She didn't say they're not appropriate. She said, I don't want to do sanctions until I see what the Court of Appeals thinks about this claim construction issue. And so I think... To be clear, even if we denied your appeal for Rule 11, I'm going to give you a quote here, even if we denied your appeal for Rule 11, I don't think that means that a 285 motion should necessarily be denied. They aren't the same standard and you look at different things in each of those two inquiries. So nothing should be read into whatever it is that we do. Thank you for that. But let me also just say on the topic of Rule 11, I do think that at the very least, even if this court didn't think Rule 11 sanctions were appropriate from the outside of the case, starting when we put in a rule, give them notice of a Rule 11 motion and put it in in April of 2013, they were on notice as this court said in the Sonometrics case, that at that point they should stop prosecuting the case. They shouldn't oppose Rule 11 motion. They shouldn't take a frivolous appeal and yet they did. And so I think not only Rule 38, but Rule 11 sanctions are appropriate in this case. Thank you. Thank you. We thank all counsel and the cases submitted.